**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**FEDERAL TRADE COMMISSION,**

       **Petitioner,**

      **v.**

**LOUISIANA CHILDREN'S MEDICAL CENTER,**

**and**

**HCA HEALTHCARE, INC.,**

       **Respondents.**

**Case No.: 1:23-cv-01103-ABJ**

**REPLY MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION FOR ORDER PURSUANT TO SECTION 7A(g)(2) OF THE CLAYTON ACT AND SECTION 13(b) OF THE FEDERAL TRADE COMMISSION ACT**

## TABLE OF CONTENTS

I.     None of the specific exemptions to the HSR Act applies to Respondents' Acquisition. ........ 3

    A.   Respondents' Acquisition does not fit within any enumerated exemption to HSR Act
       filing requirements ................................................................................................... 3

    B.   This Court should not create a new exemption to the HSR Act filing requirements .......... 6

II.    The state action doctrine does not shield Respondents from the HSR Act ............................ 7

    A.   Respondents cite no precedent for applying the state action defense to the HSR Act ........ 7

    B.   The state action defense cannot protect against an investigation. ..................................... 12

       1.   The state action doctrine is a defense to antitrust liability, not an immunity from
         investigation. ......................................................................................................... 12

       2.   Evaluating the state action defense is a fact-specific inquiry. ...................................... 14

    C.   Respondents cannot thwart an investigation by raising a defense to the underlying
       conduct ................................................................................................................... 17

III.   Respondents frustrate the purpose of the HSR Act by avoiding its filing requirements .... 19

# TABLE OF AUTHORITIES

**Cases**

*Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287 (5th Cir. 2000) ................................................ 14

*Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25 (1996) ................................................ 6

*Cal. Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97 (1980) ....... passim

*City of Lafayette, La. v. Louisiana Power & Light Co.*, 435 U.S. 389 (1978) .............................. 12

*Edinboro College Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567 (3rd Cir. 2017).... 15

*FTC v. Church & Dwight Co.*, 747 F. Supp. 2d 3 (D.D.C. 2010) ............................................ 17, 18

*FTC v. Monahan*, 832 F.2d 688 (1st Cir. 1987) ...................................................................... 17, 18

*FTC v. Morton Salt Co.*, 334 U.S. 37 (1948) .............................................................................. 3

*FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216 (2013) .................................... 8, 10, 11, 12

*FTC v. Texaco, Inc.*, 555 F.2d 862 (D.C. Cir. 1977) ............................................................. 17, 18

*FTC v. Ticor Title Ins. Co.*, 504 U.S. 621 (1992) ......................................................................... 14

*FTC v. Weyerhaeuser Co.*, 665 F.2d 1072 (D.C. Cir. 1981) ......................................................... 19

*Huron Valley Hosp., Inc. v. City of Pontiac*, 792 F.2d 563 (6th Cir. 1986) ................................. 13

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ............................................................................. 7

*N.C. State Board of Dental Examiners v. FTC*, 574 U.S. 494 (2015) .................................... passim

*Parker v. Brown*, 317 U.S. 341(1943) .................................................................................. passim

*Patrick v. Burget*, 486 U.S. 94 (1988) ......................................................................................... 13

*SmileDirectClub v. Battle*, 4 F.4th 1274 (11th Cir. 2021) ........................................................... 13

*SmileDirectClub, LLC v. Georgia Board of Dentistry*, No. 1:18-cv-02328, 2019 WL 3557892

    (N.D. Ga. May 8, 2019) ........................................................................................................ 16

*SolarCity Corp. v. Salt River Project Agric. Improvement and Power Dist.*, 859 F.3d 720 (9th

    Cir. 2017) ............................................................................................................................ 13

*South Carolina State Bd. of Dentistry v. FTC*, 455 F.3d 436 (4th Cir. 2006)............................... 13

*Southern Motor Carriers Rate Conference Inc. v. United States*, 471 U.S. 48 (1985)....... 6, 10, 11

*Surgical Care Ctr. of Hammond v. Hosp. Serv. Dist. No. 1 of Tangipahoa Parish*, 171 F.3d 231

    (5th Cir. 1999) ............................................................................................ 14

*Town of Hallie v. City of Eau Claire*, 471 U.S. 34 (1985)...................................................... 12, 16

*United States v. Blavatnik*, 168 F. Supp. 3d 36 (D.D.C. 2016)................................................... 8, 9

**Statutes**

15 U.S.C. § 18a(a)............................................................................ 3, 6, 19, 20

15 U.S.C. § 18a(c)............................................................................... 3, 5, 6, 7

15 U.S.C. § 18a(d)................................................................................. 4, 7, 9

15 U.S.C. § 18a(e)................................................................................... 22

15 U.S.C. § 18a(g)................................................................................... 19

15 U.S.C. § 49 ....................................................................................... 18

H.R. REP. NO. 94-1373 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2637 ........................................ 20

**Rules**

16 C.F.R. § 801.1(a)................................................................................ 4, 9

Respondents' Opposition confirms they have no legal basis for their refusal to comply with the filing requirements of the Hart-Scott-Rodino ("HSR") Act. Respondents do not dispute that the Acquisition satisfies the financial thresholds for filing under HSR, and thus they bear the burden of showing that they satisfy an enumerated exemption to filing. Devoting just two pages of their Opposition to enumerated exemptions to the HSR Act, Respondents ignore the plain text of the statute. They argue that although they are corporations, the Acquisition is exempt because it somehow involves a transfer "to or from . . . the State of Louisiana" and that the Acquisition is "specifically exempted by Federal statute" by virtue of the state action doctrine. They make this claim despite the plain meaning of the statutory text, and notwithstanding the history of the state action doctrine—including the analysis that would apply to them as private parties under *California Retail Liquor Dealers Association v. Midcal Aluminum, Inc.*, 445 U.S. 97, 106 (1980).

The state action defense *does not* apply to HSR filings, and it would make no sense for it to do so. The HSR Act simply provides a mechanism to alert the federal government about pending mergers to allow the Federal Trade Commission ("FTC") or Department of Justice ("DOJ") to investigate before the mergers close. The HSR Act filing requirements are unrelated to the ultimate legality of a merger—that a merger may not violate the antitrust laws is no excuse for failing to file. Indeed, most mergers noticed under the HSR Act pose little risk to competition and go unchallenged. For mergers that proceed to litigation, defendants in such cases frequently invoke—and are sometimes successful in proving—a defense. The point of the notification is to give the FTC and DOJ the opportunity to determine themselves which mergers warrant further scrutiny and potential challenge. Letting merging parties unilaterally refuse to file under the HSR Act because they claim that they may have a defense to a possible future antitrust challenge would frustrate the purpose of the HSR Act.

1

Respondents spend a substantial portion of their Opposition attempting to convince the Court of the merits of their state action defense, but that argument is premature. The applicability of the state action defense to the Acquisition is a fact-based inquiry under federal case law that cannot be proclaimed unilaterally by Respondents or the Louisiana Attorney General. Any dispute about the validity of the state action defense would take place during the investigation initiated after the HSR filing or in court as a part of a substantive challenge to the merger under Section 7 of the Clayton Act. The purpose of the HSR Act is to ensure federal antitrust agencies have an opportunity to investigate and, if necessary, a court has an opportunity to preside over litigation *before* parties consummate a possibly illegal merger. The plain text of the HSR Act makes clear that Respondents should have made their HSR filings and waited the statutorily required period before closing. The undisputed fact that Respondents did not file or wait establishes the violation of the HSR Act. Respondents' only excuse for violating the HSR Act— their asserted state action defense—simply does not apply.

Were this Court to endorse Respondents' approach, the federal antitrust agencies and courts would be deprived of the opportunity to review state action defense claims before merger consummation—the public interest the HSR Act is meant to serve. Companies would be able to avoid HSR Act notification requirements and merge simply by declaring a state action defense. But the HSR Act's notification provisions were enacted precisely to avoid the morass that federal agencies and courts must navigate—often only with great effort and expense—to unwind and remediate the anticompetitive effects of mergers after they have closed. The public interest served by the HSR Act is thus significant and should be preserved.

**ARGUMENT**

**I.      None of the specific exemptions to the HSR Act applies to Respondents' Acquisition.**

The HSR Act lays out a straightforward requirement that where the merging parties and the transaction meet certain financial thresholds, parties to that transaction must notify the agencies of the proposed transaction unless it falls within one of the enumerated exceptions. 15 U.S.C. § 18a(a) ("Except as exempted pursuant to subsection (c)" parties to a transaction must abide by the notification and waiting period requirements). The HSR Act has certain enumerated exemptions for transactions and persons that do not need to file notifications under the HSR Act. 15 U.S.C. § 18a(c)(1)-(12). None of these exemptions apply to Respondents or the Acquisition.

Respondents do not dispute that the Acquisition meets the HSR Act's filing thresholds. Respondents thus have the burden of establishing they qualify for one of the exemptions to the notice and filing requirements of the HSR Act. *See FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948) ("the general rule of statutory construction [is] that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits"). Respondents wrongly argue that two exemptions to the filing requirements of the HSR Act apply to their merger: "transfers to or from . . . a State or political subdivision thereof" (15 U.S.C. § 18a(c)(4)); and "transactions specifically exempted from the antitrust laws by Federal statute" (15 U.S.C. § 18a(c)(5)). Opp. at 21. Both exemptions are narrowly drawn and thus inapplicable to this Acquisition or Respondents' defense. This Court should also decline Respondents' invitation to create a new exemption.

**A.      Respondents' Acquisition does not fit within any enumerated exemption to HSR Act filing requirements.**

*First*, Respondents wrongly suggest that the exemption under 15 U.S.C. § 18a(c)(4)— transfers to or from a Federal agency or a State or political subdivision—is relevant. Opp. at 21.

It is not. The text of the statute and the Commission's implementing regulations amply show why LCMC's acquisition of the Tulane hospitals from HCA does not qualify, in letter or in spirit.

Respondents are neither a "State or a political subdivision of a State" nor has the COPA conferred such status upon them. The HSR Act left it to the antitrust agencies to define the terms used in the HSR Act. *See* 15 U.S.C. § 18a(d)(2)(A). Based on the implemented definitions, this exemption applies to transactions when a state, political subdivision, or state agency is itself a party to the transaction. *See* 16 C.F.R. § 801.1(a). But the exemption *does not apply when* the acquisition occurs through "a corporation or unincorporated entity engaged in commerce." 16 C.F.R. § 801.1(a)(2).[1]

Respondents' Acquisition falls far afield from the clear meaning of the exemption. This Acquisition involved a private, for-profit corporation (HCA) selling three hospitals to a non-profit corporation (LCMC). Neither LCMC nor HCA is owned by the State of Louisiana or any political subdivision of Louisiana. LCMC admits as much, categorizing "transactions like [the] Acquisition" as "[p]rivate conduct."[2] Indeed, the Louisiana State COPA itself highlights the difference between a Louisiana hospital that is part of the State of Louisiana and Respondents who are *not* part of the State of Louisiana. The COPA states:

> "New Orleans East Hospital ("NOEH") is not owned by LCMC Health; LCMC Health manages NOEH, which is not financially integrated into LCMC Health. NOEH is a Hospital Service District

---

[1] The relevant text states: "***Provided, however,*** that the term entity shall not include any foreign state, foreign government, or agency thereof (other than a corporation or unincorporated entity engaged in commerce), nor the United States, any of the States thereof, or any political subdivision or agency of either (other than a corporation or unincorporated entity engaged in commerce)" (emphasis in original).

[2] Complaint for Declaratory Judgment, Dkt. No. 1, Civ. Action No. 23-cv-1305 (E.D. La.) (April 19, 2023) at ¶ 18.

> hospital and a political subdivision of the state. Accordingly, NOEH contracts separately and is not part of the LCMC Health payor contracting process."[3]

Simply put, the 7A(c)(4) exemption does not apply to Respondents or the Acquisition at issue in this case.

The state action doctrine evaluates state actors and private parties, like Respondents, through entirely different frameworks. The Supreme Court has recognized only two circumstances in which a state necessarily exercises sovereign power for purpose of the state action defense: when the anticompetitive act in question is itself "[s]tate legislation" or when it is the "decision[] of a state supreme court, acting legislatively rather than judicially." *N.C. State Board of Dental Examiners v. FTC*, 574 U.S. 494, 505 (2015). When private parties are involved, however, they must meet a heightened standard of review, namely the two-part *Midcal* test. *See infra* section II.B.

*Second*, Respondents likewise miss the mark with their argument that the Acquisition should be exempt under, or their purported state action defense is somehow consistent with, the 7A(c)(5) exemption: "transactions specifically exempted from the antitrust laws by Federal statute." 15 U.S.C. § 18a(c)(5). Despite no federal statute "specifically exempt[ing]" state action, Respondents argue "'specifically' exempted does not mean 'expressly' exempted," and that "State action is specific, even if not express." Opp. at 22. Nowhere do Respondents offer their definition of what "specifically" should mean. Instead, Respondents seem to claim that, because the state action defense is implied by the Sherman Act and Clayton Act statutes, the Acquisition fits within this exemption. But the term "specifically" does not mean the same as "implicitly."

---

[3] Certificate of Public Advantage, Terms and Conditions for Compliance for Louisiana Children's Medical Center/LCMC Health, et. al. (Dec. 28, 2022) at n.1. ECF 23-3.

"'Specifically' can mean 'explicitly, particularly, [or] definitely,' thereby contrasting a specific reference with an implicit reference made by more general language to a broader topic." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 38 (1996) (citation omitted). There is no federal statute which "explicitly, particularly, or definitely" exempts transactions with a claim of state action defense from an antitrust investigation. Rather, "the state action doctrine is an *implied* exemption to the antitrust laws." *Southern Motor Carriers Rate Conference Inc. v. United States*, 471 U.S. 48, 56, n. 18 (1985) (emphasis added).

Apparently recognizing the weakness of their argument, Respondents offer an alternative interpretation: that "specifically" references a "category of conduct," Opp. at 21, finding state action to be a "highly 'specific'" type of conduct. *Id.* That is not the case. State action cases are heavily influenced by the facts and circumstances, with no rigid and specific steps for a state to satisfy the two prongs of *Midcal* to cover private conduct. *See infra* Section II.B.

*Finally*, as explained above, the HSR Act provided specific rules for transactions involving states, exempting only those that involve "transfers to or from" a "State or political subdivision thereof." 15 U.S.C. 18a(c)(4). That (c)(4) language would conflict with—and be rendered unnecessary by—the exemption in (c)(5), if the latter already covered transactions involving state action. The Court should find that Respondents fail to meet their burden of proving an exemption under (c)(5).

### B.      This Court should not create a new exemption to the HSR Act filing requirements.

In arguing that "mergers attributable to the State are 'exempt'" from the HSR Act, Opp. at 18, Respondents invite the Court to recognize state action as an unenumerated exemption, even though the HSR notification requirements apply to any "person" acquiring stock or assets over certain thresholds, "[e]xcept as exempted pursuant to subsection (c)." 15 U.S.C. § 18a(a).

6

But nowhere does the HSR Act or its implementing regulations contain an exemption for private transactions that a State "approves" or "endorses." If Congress had intended to exempt transactions that state governments had approved, it would have done so. The statutory exemptions include no corollary for transactions allegedly created or approved *by states*. The Louisiana legislature, the Louisiana COPA, and Respondents cannot, by fiat, exempt Respondents from their HSR Act filing obligations.

Similarly, if Congress wanted to include an exemption for a transaction that merely asserted the state action defense, the Court should assume it would have done so expressly. *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent."). Instead, Congress exempted only "transactions specifically exempted from the antitrust laws by Federal statute," 15 U.S.C. § 18a(c)(5), but did not include transactions impliedly exempted by court interpretation.

Finally, the FTC and DOJ, through rule making, are empowered to establish additional exemptions to the HSR Act. *See* 15 U.S.C. § 18a(c)(12), (d)(2)(B). They have not done so.

## II.   The state action doctrine does not shield Respondents from the HSR Act.

### A.   Respondents cite no precedent for applying the state action defense to the HSR Act.

Respondents fabricate from whole cloth a novel and illogical extension of the state action doctrine: that it applies to a purely administrative legal requirement to notify the federal government of a merger and allow for the investigation prior to the merger closing. But the state action doctrine is meant to protect only against substantive antitrust liability—not procedural requirements. Respondents have not identified, and Petitioner has not found, any case that applies the state action defense to a procedural action, much less a case that applies the state action defense to the HSR Act filing requirements.

7

Respondents' failure to identify applicable precedent is not surprising. Applying the state action defense to the HSR Act contradicts the text, structure, history, and purpose of the statute. Further, the state action doctrine provides a potential defense to liability "only when it is clear that the challenged *anticompetitive conduct* is undertaken pursuant to a regulatory scheme that is the State's own." *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 225 (2013) (internal citation and quotation marks omitted) (emphasis added); *see also Dental Examiners*, 574 U.S. at 503 (the state action defense shields "anticompetitive conduct by the States when acting in their sovereign capacity"). The HSR Act does not reach anticompetitive conduct—applying the state action defense to the HSR Act is nonsensical. The state action defense provides that federal antitrust law does not reach the "States' own anticompetitive policies out of respect for federalism," recognizing that, at times, state regulatory goals may "conflict[]" with "the Nation's commitment to a policy of robust competition." *Dental Examiners*, 574 U.S. at 504-05; *see also Parker v. Brown*, 317 U.S. 341, 352 (1943) (interpreting the Sherman Act as not prohibiting "[t]he state . . . as sovereign" from "impos[ing] the restraint [of trade] as an act of government"). The procedural requirements of the HSR Act do not implicate the federalism concerns that animate the state action defense because these requirements do not prohibit any anticompetitive conduct that the state may have a sovereign right to displace with regulation. In sum, "a failure to give notice of a merger that does not otherwise violate the antitrust law" is "a purely procedural violation of the HSR premerger notification requirement." *United States v. Blavatnik*, 168 F. Supp. 3d 36, 44 (D.D.C. 2016).

Respondents' primary argument for why the state action doctrine applies to the HSR Act rests on an incorrect analogy to the Sherman Act. Respondents argue that the HSR Act "contains the same ambiguity in the word 'person' that the Court relied on in *Parker* to exclude state action

from the Sherman Act." Opp. at 17. Respondents are wrong. There is no "ambiguity in the word 'person'" under the HSR Act. Congress empowered the antitrust agencies under the HSR Act to define the terms used in the Act, *see* 15 U.S.C. § 18a(d)(2)(A) (definitions), and the agencies did so. They defined "person" to exclude a State, including its agencies and political subdivisions, but to include "a corporation or unincorporated entity engaged in commerce." 16 C.F.R. § 801.1(a).[4] As each Respondent is a corporation and therefore a "person," LCMC and HCA are subject to the HSR Act's filing requirements.

Respondents' additional attempts to conflate the procedural requirements under the HSR Act with the prohibitions on anticompetitive conduct under other federal antitrust laws are no more convincing. Respondents first emphasize that, like the Sherman Act and Clayton Act, the HSR Act is a federal antitrust law. *See, e.g.*, Opp. at 2, 18 (quoting *Blavatnik*, 168 F. Supp. 3d at 41 ("there can be no reasonable dispute that an HSR Act civil penalty action arises under the antitrust laws" (internal citation omitted))). But this is beside the point; what matters is whether the statute imposes liability for anticompetitive conduct. Unlike particular provisions of the Sherman Act or Clayton Act, the HSR Act does not prohibit anticompetitive conduct.

Respondents' argument about how the HSR Act requires parties to observe a waiting period or are subject to monetary penalties for failing to comply with the administrative process is thus irrelevant. Opp. at 2, 17, 18, 24. Congress enacted the HSR Act to enable the antitrust agencies to more effectively determine *whether* a contemplated transaction is anticompetitive under Section 7 of the Clayton Act and then *whether* to challenge it. *See infra* Section III.

---

[4] Under 16 C.F.R. § 801.1(a), "Person" means "the ultimate parent entity and all entities which it controls directly or indirectly," and "the term entity shall not include . . . the United States, any of the States thereof, or any political subdivision or agency of either (other than a corporation or unincorporated entity engaged in commerce)."

Indeed, parties to proposed transactions covered by the HSR Act must abide by these requirements regardless of whether that proposed transaction, if consummated, would be anticompetitive. Tellingly, the majority of transactions filed under the HSR Act proceed without even a request for additional information, much less a legal challenge.[5]

Respondents rely heavily—and ultimately, incorrectly—on *Motor Carriers*, to suggest that even investigating the Acquisition "would frustrate" the State's regulatory program. *See, e.g.*, Opp. at 19. But nothing in *Motor Carriers* suggests that private parties who *may* enjoy the state action defense are immune from investigation of *whether* the state action defense is applicable. *Motor Carriers* involved a completely different procedural posture, in which the key question of active supervision—a question that remains open here—had already been answered. *Motor Carriers* was an appeal from a summary judgment determination, and the Government conceded there had, in fact, been active supervision. 471 U.S. at 65-66. *Motor Carriers* thus merely stands for the proposition that private parties who engage in anticompetitive conduct pursuant to a clearly articulated state policy and are actively supervised by the state enjoy the state action defense when that anticompetitive conduct is challenged. *Id.* at 57. This proposition is not in dispute.

For the same reasons, the "exempt from scrutiny" language in *Phoebe Putney* does not mean Respondents can evade investigation. 568 U.S. at 219 (cited in Opp. at 13). First, the quoted language does not say "wholly" exempt from scrutiny, as Respondents assert. Opp. at 13. Second, *Phoebe Putney*, which was about the FTC's ability to obtain a preliminary injunction

---

[5] In FY2021, 7.9% of HSR-reported transactions were cleared to one of the agencies for investigation and in only 1.9% did an agency seek more information from the parties. Federal Trade Commission and the Department of Justice Antitrust Division, Hart-Scott-Rodino Annual Report, Fiscal Year 2021, Exhibit A, Table 1, https://www.ftc.gov/system/files/ftc_gov/pdf/p110014fy2021hsrannualreport.pdf.

against the merger, addressed the merits of antitrust liability. In *Phoebe Putney*, the Supreme

Court held the state action defense did not apply because the clear articulation test was not met.

568 U.S. at 219-20. With this context in mind, "scrutiny" in *Phoebe Putney* means liability, not

investigation. The determination of the application of the state action defense and ultimate

antitrust liability takes factual investigation—and cannot be decided unilaterally by the merging

parties.

Respondents also cite *Motor Carriers* for the proposition that federal antitrust laws do not

apply to the Acquisition absent a clear statement to the contrary. *See* Opp. at 2. *Motor Carriers*

contains no such instruction, and notably there is no articulation of any such "clear statement"

rule in the opinion. Although their argument is not entirely clear, Respondents may be seizing on

language from *Parker*, cited in *Motor Carriers*, in which the Supreme Court found no

"unexpressed purpose" in the Sherman Act to "nullify a state's control over its officers and

agents." 317 U.S. at 351. *Parker* suggests that Congress *could* have made that statement in the

Sherman Act, but did not. *Id*. at 350 ("We may assume also, without deciding, that Congress

could, in the exercise of its commerce power, prohibit a state from maintaining a stabilization

program like the present because of its effect on interstate commerce."). Respondents' argument

confuses this distinction. This case is not about the antitrust laws prohibiting conduct that we

know qualifies for the state action defense. Rather, this is about allowing an investigation to

determine if the state action defense applies at all. Whether Respondents satisfy *Midcal* is a

context- and fact- dependent inquiry analyzed pursuant to federal case law. *See infra* section

II.B.2. *Motor Carriers* changes nothing about this, and does not immunize a private party from

HSR filing procedures because they might be able to defend their conduct with the state action

doctrine. Contrary to Respondents suggestion, the state action defense is "disfavored." *Phoebe Putney*, 568 U.S. at 225 (internal quotations omitted).

> **B.    The state action defense cannot protect against an investigation.**
>
> > **1.    The state action doctrine is a defense to antitrust liability, not an immunity from investigation.**

Respondents inaccurately attempt to characterize the state action doctrine as an immunity from the antitrust laws, and thus an immunity to Section 7A of the Clayton Act (i.e., the HSR Act). Opp. at 13, 17, 18. It is not. Indeed, Respondents' entire argument depends on treating the state action doctrine not only as an immunity from antitrust liability—which it is not—but also an immunity from antitrust scrutiny—which it certainly is not. This argument finds no support in either Supreme Court precedent or decisions from every circuit that has addressed the question directly.

Respondents selectively rely on the Supreme Court's use of the word "immunity," Opp. at 1–2, 10, 13, 17, 18, 25, but the Supreme Court has also used the more precise word "defense" to describe the doctrine, even in the same opinion. *See, e.g.*, *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 36 (1985) ("On the other hand, in proving a state policy to displace competition exists, the municipality need not 'be able to point to a specific, detailed legislative authorization' in order to assert a successful *Parker* defense to an antitrust suit.") (citation omitted). When describing the use of the term "exemption," the Supreme Court explicitly noted that the word is "shorthand" for "*Parker*'s holding that the Sherman Act was not intended by Congress to prohibit the anticompetitive restraints imposed by California in that case." *City of Lafayette, La. v. Louisiana Power & Light Co.*, 435 U.S. 389, 393 n.8 (1978). In practice, the Supreme Court has applied the state action doctrine as a defense to antitrust liability. *Patrick v. Burget*, 486 U.S.

94, 99 (1988) (describing issue presented by state action defense as whether the Sherman Act "*prohibits*" the conduct at issue) (emphasis added).

Circuit Courts have also viewed the state action doctrine as a defense to antitrust liability and not an immunity and, notably, have done so when that distinction has been dispositive. In *SmileDirectClub v. Battle*, the Eleventh Circuit ruled on the nature of the state action doctrine in the context of the collateral order doctrine when defendants appealed a denied motion for dismissal on state action grounds. 4 F.4th 1274, 1277 (11th Cir. 2021) (en banc). In parsing the Supreme Court's varied language concerning the state action doctrine, the Eleventh Circuit noted that "the 'immunity' phrasing is not conclusive," *id.* at 1280, and cautioned against the "tyranny of labels," *id.* (citation omitted), when holding that the state action doctrine is a defense instead of an exemption or immunity from trial. *See id.* ("We conclude that *Commuter Transportation Systems* incorrectly characterized *Parker* as creating an immunity from trial.").

The Eleventh Circuit is not alone. At least four other circuits have held specifically that the state action doctrine is a defense—not an exemption or immunity from suit. *See SolarCity Corp. v. Salt River Project Agric. Improvement and Power Dist.*, 859 F.3d 720, 726 (9th Cir. 2017) ("Reading *Parker* with appropriate skepticism toward the Power District's claim of immunity from suit shows that the state-action doctrine is a defense to liability, not immunity from suit."); *South Carolina State Bd. of Dentistry v. FTC*, 455 F.3d 436, 444 (4th Cir. 2006) (stating that "*Parker* . . . did not identify or articulate a constitutional or common law 'right not to be tried,'" and is therefore a defense to liability instead of an immunity to suit); *Huron Valley Hosp., Inc. v. City of Pontiac*, 792 F.2d 563, 567 (6th Cir. 1986) (finding that the state action doctrine "exception is not an entitlement of the same magnitude as qualified immunity or absolute immunity, but rather is more akin to a defense to the original claim") (quotation marks

13

omitted); *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 292 (5th Cir. 2000) ( "[W]e conclude the state action doctrine does not immunize private defendants from suit."); *id.* at 294 ("[The] invocation of the state action doctrine, if meritorious, provides only a defense against liability."); *Surgical Care Ctr. of Hammond v. Hosp. Serv. Dist. No. 1 of Tangipahoa Parish*, 171 F.3d 231, 234 (5th Cir. 1999) (en banc) ("While thus a convenient shorthand, '*Parker* immunity' is more accurately a strict standard for locating the reach of the Sherman Act than the judicial creation of a defense to liability for its violation."). As these cases demonstrate, the state action doctrine is a defense to antitrust liability; invoking it here to protect LCMC and HCA from even an investigation to determine potential liability is misplaced and premature.

### 2.     Evaluating the state action defense is a fact-specific inquiry.

Respondents have apparently decided for themselves, based on the Louisiana Attorney General's issuance of a COPA, that the state action defense applies to the Acquisition. It may turn out that the FTC, after its investigation, agrees with this conclusion. But it is not up to Respondents, or the state attorney general, to determine that the state action defense applies under federal law. Private parties that seek to invoke the state action defense can be unsuccessful. *See Dental Examiners*, 574 U.S. at 504-05 (the state action defense "does not always" apply where a state "delegates control over a market to a nonsovereign actor"); *FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 639-40 (1992) (finding no state action defense without "active state supervision"); *Patrick*, 486 U.S. at 105 ("the state-action doctrine does not protect the peer-review activities challenged in this case from application of the federal antitrust laws"). As Respondents agree, *see* Opp. at 12, non-sovereign actors (such as private hospitals) may invoke the state action defense only if they can show (1) that the anticompetitive conduct was taken in accordance with a "clearly articulated and affirmatively expressed . . . state policy" to displace

competition, and (2) that the conduct is "actively supervised by the State itself." *Midcal*, 445

U.S. at 105 (internal citations omitted).

Federal case law has developed levels of scrutiny to assess the state action defense for

different types of actors (for example, municipalities receive a different level of scrutiny than

private parties). *See Edinboro College Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567,

572-73 (3rd Cir. 2017). The *Midcal* test, which applies to private parties like those here, is

"rigorous" and "[t]he most searching level of scrutiny." *Id*. at 573. Moreover, the analysis is

"flexible and context dependent." *Dental Examiners*, 574 U.S. at 515. Respondents' exhortations

that the Louisiana Attorney General has blessed the Acquisition as a matter of state law are

immaterial: whether the state action defense applies to this Acquisition is a matter of federal

law—reviewed in the first instance by the FTC after Respondents file under HSR. *See id.* at 510-

12 (rejecting the state's designation of an agency as exempt from *Midcal*'s active supervision

requirement).

The State of Louisiana, when allowing private parties to carry out an anticompetitive

state regulatory scheme, is not empowered to itself define the application of the state action

defense and the scope of federal antitrust law. "[A] State may not confer antitrust immunity on

private persons by fiat." *Ticor Title*, 504 U.S. at 633. Instead, the COPA is, at best, one piece of

evidence of state supervision of the Acquisition. Although this evidence is likely relevant to a

state action defense, its findings pursuant to state law do not definitively answer the *federal law*

question of whether the state action defense applies. *See Dental Examiners*, 574 U.S. at 510-12.

To satisfy the active supervision prong of *Midcal*, the state supervisor must "review the

substance of the anticompetitive decision, not merely the procedures followed to produce it." *Id.*

at 515. Other "constant requirements" of active supervision relate to the supervisor itself: the

supervisor must have authority to "veto or modify" the decision and must not itself be a market participant. *Id*. As these requirements make clear, whether active supervision occurs is a factual question. *See Town of Hallie*, 471 U.S. at 46 (the "requirement of active state supervision serves essentially an evidentiary function"); *see also Ticor Title*, 504 U.S. at 638 ("In the absence of active supervision in fact," the state action defense does not apply.).

It is therefore *not* "obvious that the Acquisition is exempt from Section 7." Opp. at 29. The existence of the COPA does not necessarily mean there was active supervision. The Northern District of Georgia's opinion on a motion to dismiss in *SmileDirectClub, LLC v. Georgia Board of Dentistry* is instructive. No. 1:18-cv-02328, 2019 WL 3557892 (N.D. Ga. May 8, 2019). Faced with a complaint alleging anticompetitive conduct by state dental board members, the defendants attached to their motion to dismiss a "Certification of Active Supervision" signed by the Governor of Georgia, purporting to approve the alleged anticompetitive conduct at issue. *Id.* at *5. The court denied the motion because there had not been fact finding on the nature of the supervision that led to its signing. *Id.* As that court explained, "Only discovery will determine whether the Board provided all relevant information to the Governor, whether the proposed amendment was subjected to any meaningful review by the Governor, or whether the Certification of Active Supervision was merely 'rubberstamped' as a matter of course." *Id.*

To be clear, at this stage, the FTC has not taken a position on whether the Acquisition is actively supervised, because the FTC has not conducted an investigation that would permit it to assess this claim. The FTC's merger review will evaluate Respondents' state action defense, including, for example, whether the Louisiana Attorney General assessed whether the Acquisition implements a clearly articulated state policy to displace competition instead of

16

serving private commercial interests. *See Patrick*, 486 U.S. at 101 ("The active supervision

prong of the *Midcal* test requires that state officials have and exercise power to review particular

anticompetitive acts of private parties and disapprove those that fail to accord with state policy . .

. rather than merely the party's individual interests.").

Respondents' Opposition, which claims the Louisiana Attorney General's review was

"extensiv[e]," only serves to underscore this point. Opp. at 5. The *portions* of the Louisiana

Attorney General's review record appended to Respondents' brief may well inform the

determination of whether active supervision occurred. But without an investigation as part of the

merger review, the FTC cannot assess this record or its completeness, including whether all

relevant information was in fact provided to the Louisiana Attorney General. Additionally, the

FTC cannot, at this stage, assess the procedures to ensure the Acquisition is supervised in

accordance with state policy in the future. The FTC cannot, therefore, make a conclusion as to

whether the supervision by the Louisiana Attorney General meets the *Midcal* test. And, at this

stage, neither can this Court. Respondents' approach puts the cart before the horse.

### C.     Respondents cannot thwart an investigation by raising a defense to the underlying conduct.

The D.C. Circuit has made clear that it is inappropriate for parties under investigation to

"contest substantive issues in an [administrative subpoena] enforcement proceeding, when the

agency lacks the information to establish its case, [because] administrative investigations would

be foreclosed or at least substantially delayed." *FTC v. Texaco, Inc.*, 555 F.2d 862, 879 (D.C.

Cir. 1977); *FTC v. Church & Dwight Co.*, 747 F. Supp. 2d 3, 7 (D.D.C. 2010) (same), *aff'd*, 665

F.3d 1312 (D.C. Cir. 2011). In *FTC v. Monahan*, the First Circuit addressed a target's improper

effort to avoid investigation by raising the state action defense. 832 F.2d 688 (1st Cir. 1987).

There, the FTC sent subpoenas to a state board of pharmacy to investigate whether the board's

conduct violated the antitrust laws. *Id.* at 688. The board resisted, and the court held that it was improper to evaluate whether the state action defense applied before the FTC had the opportunity to investigate. *Id.* at 689. Then-judge Breyer explained that, "We, like the FTC, must wait to see the results of the investigation before we know whether, or the extent to which, the activity falls within the scope of a 'clearly articulated and affirmatively expressed' state policy." *Id.*

Like the respondents in *Texaco* and *Monahan*, Respondents are required to provide certain information in connection with an FTC investigation. And like the respondents in *Texaco* and *Monahan*, Respondents have refused, raising a defense to the merits of an antitrust claim—the same state action defense then-Judge Breyer rejected in *Monahan*. For the same reason such a defense has no bearing on subpoena compliance, it has no bearing on compliance with the requirement to provide notification and information under the HSR Act. *See Church & Dwight*, 747 F. Supp. 2d at 7, *aff'd*, 665 F.3d 1312 ("The 'substantive antitrust issues' raised by [Respondents] have no bearing at the investigative stage, when it may be that no complaint will ever issue." (internal quotation omitted)).

Respondents concede that the state action defense does not preclude an FTC investigation initiated by subpoena under the FTC Act[6]—as they must under *Texaco*. Respondents' narrow argument—that the investigatory processes under the FTC Act and the HSR Act are "materially different," Opp. at 26—lacks merit.

- *First*, Respondents argue that in the context of a subpoena under Section 9 of the FTC Act, a "separate enforcement proceeding requiring proof on the merits—and allowing defenses on the merits—is required to enjoin a merger." Opp. at 26. The same is true in

---

[6] *See* Opp. at 26 (arguing that administrative subpoenas under Section 9 of the FTC Act, 15 U.S.C. § 49, are "not antitrust laws"); *see also* April 20, 2023 Hearing Tr. 13:20-14:4.

the context of the HSR Act, as shown in the case that Respondents cite. *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1073 (D.C. Cir. 1981) (noting that Commission brought action pursuant to Section 13(b) of the FTC after defendants filed Premerger Notification and Report forms). Were the FTC to challenge Respondents' Acquisition as an antitrust violation, that would be an entirely separate action.

- *Second*, Respondents argue that those who violate the HSR Act are subject to "massive liability in the form of daily penalties." Opp. at 25 (citing 15 U.S.C. § 18a(g)(1)). But those penalties are currently not at issue in Petitioner's action; the FTC is only requesting equitable relief.

- *Third*, the core of Respondents' argument that the HSR Act is "materially different" from other investigatory processes is that the HSR Act contains a waiting period. Respondents concede that "[o]f course it is true that the purpose of the waiting period is to give the Commission time to review the merger," but argue—without any support—that the waiting period remains a "substantive bar on conduct." Opp. at 26. To the contrary, the waiting period is agnostic about the substance of filing parties' conduct; it applies to all transactions that meet threshold requirements—whether the filing parties' conduct is procompetitive or anticompetitive, and whether or not the filing parties may be able to establish a defense to anticompetitive conduct. *See* 15 U.S.C. § 18a(a). It does not "bar" conduct, but merely delays it during the waiting period.

## III.   Respondents frustrate the purpose of the HSR Act by avoiding its filing requirements.

Accepting Respondents' argument that the state action defense somehow "immunizes" or "exempts" the Acquisition from the procedural requirements of the HSR Act would frustrate the purpose of the HSR Act, would create an extraordinary loophole in the merger review process,

19

and could have far-reaching and devastating consequences for effective federal antitrust enforcement. There is a strong public interest in maintaining the integrity of the HSR premerger notification process.

The HSR Act was enacted to give federal government antitrust agencies "a fair and reasonable opportunity to detect and investigate large mergers of questionable legality before they are consummated" and "win a premerger injunction—[]which is often the only effective and realistic remedy against large, illegal mergers—[]before the assets, technology, and management of the merging firms are hopelessly and irreversibly scrambled together." H.R. REP. NO. 94-1373, pt. 1, at 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2637, 2637. The HSR Act created a neutral process for premerger notification and investigation that does not require assessing beforehand whether the proposed transaction is anticompetitive or illegal under Section 7. *See id.* ("The bill in no way alters the substantive legal standard of Section 7."). The HSR Act notification is required for *all transactions and all entities* that meet the thresholds and are not subject to an exemption—whether or not they likely may be deemed anticompetitive. *See* 15 U.S.C. § 18a(a).

The HSR Act was enacted to solve the twin problems of detection and remedy which hampered the then-existing merger regime. Before 1976, parties were not required to alert the antitrust authorities of pending mergers, making it difficult to uncover and stop potentially illegal mergers. And when the agencies did uncover and challenge a merger, it was often only after the transaction had already been consummated, making it exceedingly difficult to re-create the competitive world as it existed pre-merger. *See* H.R. REP. NO. 94-1373, pt. 3, at 8 (1976), *reprinted in* 1976 U.S.C.C.A.N. 2637, 2640–41.

Relieving Respondents of their statutory obligation under the HSR Act because they have unilaterally claimed that the Acquisition qualifies for their newly-created "state action immunity exemption" to the HSR Act undermines the very purpose of the notification requirements of the HSR Act. This decades-old law was created to ensure that the federal government is aware of mergers before they happen and can effectively remedy any merger adjudged to be illegal. If two firms' operations are allowed to combine without scrutiny, it could lead to higher prices, lower quality services or goods, and reduced innovation. In addition, the consummation of a transaction could cause other harmful side effects, including employees laid off, facilities closed, services shuttered, and other irreversible actions taken to integrate the merged company. If it turns out the Acquisition is not entitled to a state action defense and does violate Section 7, the federal antitrust enforcement agencies and courts would struggle to disentangle the remaining assets and re-create a viable, competitive business. Congress created the HSR Act, and this Court needs to reject Respondents' position, precisely to prevent this procedural nightmare. This Court should prevent this and future end-runs around the HSR Act by ordering Respondents to file premerger notifications required by the HSR Act and enter the proposed injunctive Order, ECF 6, or, if the Court decides, a continuation of the Stipulated Order, ECF 9, until the conclusion of the HSR Act waiting period.

## CONCLUSION

For the reasons stated above, the Commission respectfully requests that the Court order Respondents to comply with the filing requirements under the HSR Act and further, under the equitable authority granted by the statute, enjoin Respondents from further combining the former HCA hospitals with LCMC's hospitals until (1) 30 days after filing the required notice; or (2) in the event that the FTC requires the submission of additional information pursuant to 15 U.S.C.

§ 18a(e)(1), 30 days after Respondents comply with that request; or (3) in the event that the FTC sues to enjoin this Acquisition because it is illegal, until the conclusion of that litigation. The Commission further requests that the Court order LCMC to provide the FTC notice before acquiring any hospital or other medical facility, either directly or indirectly, in the State of Louisiana for the duration of the hold separate order.

Dated: April 28, 2023

Respectfully submitted,

*/s/ Mark Seidman*

Mark Seidman, D.C. Bar No. 980662
Neal J. Perlman
Susan A. Musser, D.C. Bar No. 1531486
Adam Pergament, D.C. Bar No. 998082
Stephen Rodger, D.C. Bar No. 485518
James H. Weingarten, D.C. Bar No. 985070
Bureau of Competition
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-2657