## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil Action No. 23-1103 (ABJ) |
| HCA HEALTHCARE, INC., *et al.*, | ) ) | |
| Respondents. | ) ) ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

This case concerns the acquisition by Louisiana Children's Medical Center ("LCMC") of three hospitals from HCA Healthcare, Inc. ("HCA"). The transaction was consummated in January of 2023, and the parties to the merger did not provide federal antitrust authorities with the advance notice that would have enabled them to review the acquisition in accordance with the Hart-Scott-Rodino amendments to the Clayton Act, 15 U.S.C. § 18a *et seq.* ("HSR Act"),[1] and to institute any action to enjoin the deal before the closing took place and the integration of the three hospitals into the LCMC health system began.

On April 20, 2023, the Federal Trade Commission ("FTC" or "Commission") filed a petition for injunctive relief, asking the Court to order LCMC to halt further integration of the three hospitals while the agency investigated whether the acquisition violates federal antitrust laws.

---

[1] Section 18a(a) requires parties to transactions of a certain size to notify the government before consummating the merger. *See* 15 U.S.C. § 18a(a). According to the FTC, the provision is designed to "avoid the difficulty associated with unwinding an acquisition of two already integrated companies." FTC's Statement of P. & A. in Supp. of Mot. for Order. [Dkt. # 4] ("FTC's Mem.") at 2. There appears to be no dispute that the hospital transaction at issue in this case meets the reporting threshold.

*See* FTC's Pet. for Injunctive Relief [Dkt. # 1] ("Pet."); FTC's Am. Mot. for Order [Dkt. # 6];[2] *see also* Decl. of Maribeth Petrizzi, Assistant Dir. of the Compliance Div., FTC Bureau of Competition [Dkt. # 5] ("Petrizzi Decl.") ¶ 34 ("Without this Court ordering that the Respondents comply with the HSR Act pursuant to 7A(g)(2) and putting in place a Hold Separate order as equitable relief, LCMC will continue to combine its assets and personnel with the Acquired Hospitals in a way that makes it hard to unwind the Acquisition prior to the Commission completing its review of the Acquisition and any applicable defenses.").

LCMC has moved to dismiss or to transfer the matter to the Eastern District of Louisiana based on lack of personal jurisdiction.  LCMC's Mot. to Dismiss [Dkt. # 19] ("Mot. to Dismiss"). The hospitals separately moved to transfer pursuant to 28 U.S.C. § 1404(a).   LCMC & HCA's Mot. to Transfer [Dkt. # 20] ("Mot. to Transfer").  After considering all of the relevant factors, the Court will grant the motion to transfer the case to the Eastern District of Louisiana pursuant to section 1404(a), rendering the challenge to personal jurisdiction moot.

### BACKGROUND AND PROCEDURAL HISTORY

On October 10, 2022, the respondent hospitals publicly announced that Louisiana Children's Medical Center would be acquiring Tulane University Medical Center, Lakeview Regional Medical Center, and Tulane Lakeside Hospital from HCA Healthcare, Inc.  *See* Decl. of Jody B. Martin, Chief Legal Officer at LCMC, Ex. to Mot. to Dismiss [Dkt. # 19-1] ("Martin Decl.") ¶¶ 6–7.  The transaction closed on January 1, 2023.  *Id.* ¶ 6.

---

2       The Commission filed a motion for an injunction, FTC's Mot. for Order [Dkt. # 3], and an amended motion for an injunction.  FTC's Am. Mot. for Order.  Given the amendment, the Court ruled that the original motion was moot, Min. Order (Apr. 21, 2023), leaving the amended filing as the operative motion.

The merger was reported in the media on January 3, 2023, and LCMC's Chief Executive Officer detailed the company's plans for integrating its operations with the newly acquired hospitals in a press release.  Petrizzi Decl. ¶¶ 13–14.

Two months later, the FTC premerger notification office informed counsel for LCMC that the office had become aware of the acquisition, and it asked why LCMC had not filed the premerger notification under the HSR Act.  Petrizzi Decl. ¶ 15.

The FTC took the position that given the size of the merger, the premerger notification was required by law and there were no applicable statutory exemptions.  Because the transaction had already closed, the Commission asked LCMC to cease any further integration of the acquired hospitals until the HSR notification had been filed and the agency completed its examination of the competitive effects of the transaction.  Petrizzi Decl. ¶¶ 15–31.  The hospitals took the position that the merger was exempt from federal antitrust enforcement, and the premerger notification requirement did not apply, because the hospital merger had already been approved by the state of Louisiana with the issuance of a Certificate of Public Advantage ("COPA").  Petrizzi Decl. ¶¶ 16, 18, 23, 31; Martin Decl. ¶¶ 10, 17; *see* Martin Decl. ¶ 10 ("I understand that the Louisiana legislature has empowered the Attorney General to grant such COPAs, which exempt transactions from regulation under the antitrust laws where such transactions serve the important State interest in the health and welfare of its citizens.").  Communications between the parties continued in this vein for approximately five or six weeks, and LCMC did not accede to the FTC's request.

On April 19, 2023, the two parties to the merger filed separate declaratory judgment actions in the Eastern District of Louisiana, where LCMC and the three acquired hospitals are located. *See HCA Healthcare, Inc. v. Garland*, No. 2:23-cv-01311 (E.D. La.), and *Louisiana Children's Medical Center v. Garland*, No. 2:23-cv-01305 (E.D. La.) (the "Louisiana actions"); *see also*

Martin Decl. ¶ 19.  Both lawsuits seek a declaration that the hospitals' transaction is exempt from federal antitrust law, including the HSR Act, because the Louisiana Attorney General issued the Certificate of Public Advantage.

On the following day, April 20, 2023, the Commission filed this action, along with a motion for a temporary restraining order and a motion for injunctive relief.  Pet.; FTC's Mot. for an Order to Show Cause and for a TRO [Dkt. # 2]; FTC's Mem.  It asked the Court to enjoin any further integration of the three hospitals by LCMC and to order respondents to file the HSR notification so that the agency can consider whether the transaction violates the Clayton Act.  *See* FTC's Am. Mot. for Order at 1–2.

The FTC underscores the mandatory nature of the duties the HSR Act imposes on parties to an intended acquisition.  FTC's Mem. at 2–4.  LCMC asserts that because the transaction was approved by the state's Attorney General under the COPA statute, it is immune from federal

antitrust scrutiny, including HSR review, under the state action immunity doctrine.  Mot. to Dismiss at 2, 6.[3]

Louisiana state law authorizes its Department of Justice to grant a COPA if "the department finds that the agreement is likely to result in lower health care costs or is likely to result in improved access to health care or higher quality health care without any undue increase in health care costs."  La. Stat. Ann. § 40:2254.4 (1997).

The statute was enacted "to provide the state . . . with direct supervision and control over the implementation of cooperative agreements, mergers, joint ventures, and consolidations among health care facilities for which certificates of public advantage are granted."  La. Stat. Ann.

_____

3       LCMC questions why the FTC did not raise concerns until March.  "Prior to the Acquisition, the parties to the transaction sought a Certificate of Public Advantage ('COPA') from the Louisiana Attorney General. . . .  The process was subject to a period of public notice and comment, and a well-attended public hearing at which dozens of citizens spoke. . . .  The public hearing was attended by members of the public and press and covered widely in local media in December 2022.  The January 1, 2023 closing was also widely publicized through the parties' press releases and in local and national media."  Martin Decl. ¶¶ 10–11, 13.  It adds: "[h]alting integration (beyond the stipulated agreement that LCMC has entered into with the FTC and that this Court approved) would impair patient care, impede Louisiana's goals of improving access to quality and affordable health care via the Acquisition, and impose [a] massive burden on LCMC . . . ."  *Id.* ¶ 21.

The FTC emphasizes though, that with the HSR Act, Congress placed the onus on the parties contemplating a merger of this size to notify the agency of their intentions in advance.

> This decades-old law was created to ensure that the federal government is aware of mergers before they happen and can effectively remedy any merger adjudged to be illegal. . . .  [T]he consummation of a transaction could cause . . . harmful side effects, including employees laid off, facilities closed, services shuttered, and other irreversible actions taken to integrate the merged company.  If it turns out the Acquisition is not entitled to a state action defense and does violate Section 7, the federal antitrust enforcement agencies and courts would struggle to disentangle the remaining assets and re-create a viable, competitive business.

FTC's Reply in Supp. of Mot. for Order [Dkt. # 28] at 21.  In short, the agency explains, the HSR Act was enacted "precisely to prevent this procedural nightmare."  *Id.*

§ 40:2254.1 (1997).  And the state legislature made its intentions plain when it enacted the statutory scheme:

> It is the intent of the legislature that supervision and control over the implementation of these agreements, mergers, joint ventures, and consolidations substitute state regulation of facilities for competition between facilities and that this regulation have the effect of granting the parties to the agreements, mergers, joint ventures, or consolidations state action immunity for actions that might otherwise be considered to be in violation of state antitrust laws, federal antitrust laws, or both.

La. Stat. Ann. § 40:2254.1 (1997).

On the day the FTC's action was filed in this district, the Court held a scheduling conference with counsel, and the parties agreed to confer regarding whether they could come to terms on an agreement to freeze further significant integration while the Court considered the merits of the request for interim injunctive relief.  *See* Tr. of Scheduling Conference Call [Dkt. # 13].  During the conference, LCMC informed the Court about the hospitals' pending declaratory judgment actions in the Eastern District of Louisiana, and it stated that it intended to file a motion to transfer this case to that district.  *Id.* at 14:25–15:8.  The Court then set a schedule for briefing both the legal question underlying the Commission's motion and the anticipated defense motions.  *See* Min. Order (Apr. 20, 2023).

On April 21, the parties submitted a stipulation in which LCMC agreed to maintain the status quo and withhold taking certain significant steps towards integration until the Court either granted the motion to transfer the case or entered an order on the FTC's request for an injunction. Stipulation [Dkt. # 9].  The Court entered an order based on the stipulation, Order [Dkt. # 12], and this rendered the motion for a temporary restraining order moot.  Order at 3.

On April 24, LCMC filed its motion to dismiss for lack of personal jurisdiction, Mot. to Dismiss, and respondents filed their motion to transfer under 28 U.S.C. § 1404(a).  Mot. to Transfer.  Both motions are fully briefed.  *See* FTC's Opp. to Mot. to Dismiss [Dkt. # 24] ("Opp.

to Mot. to Dismiss"); LCMC's Reply in Supp. of Mot. to Dismiss [Dkt. # 27]; FTC's Opp. to Mot. to Transfer [Dkt. # 25] ("Opp. to Mot. to Transfer"); LCMC & HCA's Reply in Supp. of Mot. to Transfer [Dkt. # 26].

On April 26, the hospitals filed their opposition to the Commission's motion for injunctive relief, which is also fully briefed.  *See* LCMC & HCA's Opp. to Mot. for Order [Dkt. # 23]; FTC's Reply in Supp. of Mot. for Order.

## STANDARD OF REVIEW

**Personal Jurisdiction**

A plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  To survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  To establish that personal jurisdiction exists, the "plaintiff must allege specific acts connecting the defendant with the forum."  *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  A plaintiff "cannot rely on conclusory allegations" to establish personal jurisdiction. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).  "A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction . . . ." *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).

**Transfer under 28 U.S.C. § 1631 and § 1404(a)**

A court that lacks jurisdiction over a civil action may "if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought . . . ." 28 U.S.C. § 1631.  Whether dismissal or transfer is "in the interest of justice" is committed to "the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  The Court has "broad discretion" to transfer a case under section 1404. *In re Scott*, 709 F.2d 717, 719 (D.C. Cir. 1983).  A defendant, as the moving party, bears the burden of establishing that transfer is proper.  *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001).  The decision to transfer requires an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The threshold question under section 1404(a) is whether the action "might have been brought" in the transferee district.  28 U.S.C. § 1404(a).  If the prerequisites to transferability are satisfied, the Court must then go on to balance case-specific private interest and public interest factors to determine whether transfer is appropriate.  *See The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000).  Private interest considerations include:

(1)     the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants;

(2)     the defendants' choice of forum;

(3)     whether the claim arose elsewhere;

(4)     the convenience of the parties;

(5)     the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

(6)     the ease of access to sources of proof.

*Trout Unltd. v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).   The public interest considerations include:

(1)     the transferee's familiarity with the governing laws;

(2)     the relative congestion of the calendars of the potential transferee and transferor courts; and

(3)     the local interest in deciding local controversies at home.

*Id.*

## ANALYSIS

LCMC moves to dismiss this matter under Rule 12(b)(2) for lack personal jurisdiction, or alternatively, to transfer it to the Eastern District of Louisiana, which it agrees has personal jurisdiction over it pursuant to 28 U.S.C. § 1631.  *See* Mot. to Dismiss.  The respondents also filed a separate motion to transfer for the convenience of the parties pursuant to 28 U.S.C. § 1404(a). *See* Mot. to Transfer.

## I.     Personal Jurisdiction

To exercise personal jurisdiction over a defendant, "the procedural requirement of service of summons must be satisfied" and a "constitutionally sufficient relationship between the defendant and the forum" must be shown.  *Mwani v. bin Laden*, 417 F.3d 1, 8–9 (D.C. Cir. 2005), quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).

In its petition, the Commission asserts that "this Court has jurisdiction over the Respondents and over the subject matter of this action pursuant to Section 7A(g)(2) of the Clayton Act, 15 U.S.C. § 18(a) [the HSR Act], Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and 28 U.S.C. §§ 1331, 1337, 1345." Pet. at 4.  It adds that venue here "is proper pursuant to Section 12

of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 139l(b) and (c), because the cause of action arose in this district, where Respondents failed to file the required notification of their transaction." *Id.*

LCMC maintains in its motion to dismiss that the Court lacks personal jurisdiction over it under section 12 of the Clayton Act, ignoring the other provisions invoked. *See* Mot. to Dismiss at 3–5. It argues that section 12 does not provide a statutory basis for service of process, a necessary starting point for the establishment of personal jurisdiction. *Id.* at 3. Section 12 provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.

LCMC points to *GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000), in which the D.C. Circuit read the two clauses of section 12 to impose distinct requirements, and held that the second part, which provides for nationwide service of process, applies only if the first part, which governs venue, has been satisfied. *See* Mot. to Dismiss at 3–4; 199 F.3d at 1350–51, citing *Goldlawr, Inc. v. Heiman*, 288 F.2d 579, 581 (2d Cir. 1961), *rev'd on other grounds*, 369 U.S. 463 (1962); and Herbert Hovenkamp, *Personal Jurisdiction and Venue in Private Antitrust Actions in the Fed. Courts*, 67 Iowa L. Rev. 485, 509 (1982) ("A better approach is to interpret section 12 the way it is written. Worldwide service is proper only when the action is brought in the district where the defendant resides, is found, or transacts business."). According to LCMC, the Commission failed to plead sufficient facts to satisfy the venue requirement that would be the predicate for nationwide service of process under section 12 because it did not show that LCMC "was an inhabitant of, may be found in, or transacted business in the

District of Columbia 'as required by Section 12's first clause.'"  Mot. to Dismiss at 4, quoting

199 F.3d at 1351.  Therefore, it asserts, the FTC cannot rely on the second clause authorizing

nationwide service of process to provide for personal jurisdiction in this case.  *Id.* at 4–5.

The Commission responds that, putting aside the Clayton Act, the Court has personal

jurisdiction over LCMC because section 13(b) of the FTC Act, coupled with Federal Rule of Civil

Procedure 4, confers personal jurisdiction over corporate defendants regardless of their contacts

with the forum.  Opp. to Mot. to Dismiss at 3–5.

Section 13 of the FTC Act authorizes the Commission to seek an injunction when it "has

reason to believe" that "any person, partnership, or corporation is violating, or is about to violate,

any provision of law enforced by the Federal Trade Commission."  15 U.S.C. § 53.  Section 13(b)

states:

> Any suit may be brought where such person, partnership, or corporation
> resides or transacts business, or wherever venue is proper under section
> 1391 of Title 28. . . .  In any suit under this section, process may be served
> on any person, partnership, or corporation wherever it may be found.

15 U.S.C. § 53(b).

Federal Rule of Civil Procedure 4(k)(1)(C) provides that "[s]erving a summons or filing a

waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a

federal statute."  Thus, the Commission contends, it has met its burden of establishing that the

Court has personal jurisdiction:  section 13(b) of the FTC Act authorizes nationwide service of

process, and the Commission has served LCMC, which has minimum contacts with the United

States.  Opp. to Mot. to Dismiss at 4, citing *FTC v. Mallett*, 818 F. Supp. 2d 142, 147 (D.D.C. 2011)

and *SEC v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004).[4]

---

4       There is no dispute that LCMC has "minimum contacts with the United States."  *See* Mot.
to Dismiss at 6 (stating that the hospitals are subject to personal jurisdiction in the Eastern District
of Louisiana).

It is well-established that generally, when a court exercises jurisdiction by virtue of a federal statute authorizing nationwide service of process, minimum contacts with the United States are enough to support the exercise of personal jurisdiction over an out-of-state defendant.  In *Bilzerian*, the D.C. Circuit concluded that there was personal jurisdiction over a non-resident borrower because 28 U.S.C. § 1692 authorized nationwide service of process:  "[i]n such circumstances, minimum contacts with the United States suffice."  378 F.3d at 1106 n.8; *see also Flynn v. Ohio Bldg. Restoration, Inc.*, 260 F. Supp. 2d 156, 170–71 (D.D.C. 2003) (ERISA's nationwide service of process provision grants court personal jurisdiction over defendants); *Bally Gaming, Inc. v. Kappos*, 789 F. Supp. 2d 41, 47 (D.D.C. 2011) (same in case involving patent interference statute); *Reese Bros., Inc. v. U.S. Postal Serv.*, 477 F. Supp. 2d 31, 37–40 (D.D.C. 2007) (same in case involving Federal Debt Collection Procedures Act).

But in light of *GTE New Media Services*, and its reading of section 12 of the Clayton Act, it appears that one must also interpret the nationwide service provision in section 13(b) to be predicated on the availability of venue, *see* 199 F.3d at 1351 ("A party seeking to take advantage of Section 12's liberalized service provisions must follow the dictates of both of its clauses."), and therefore, whether one is looking at the Clayton Act or the FTC Act, venue would be the touchstone.[5]

Since the respondents do not reside or transact business in the District of Columbia, the only way venue would be proper under Section 13(b) would be if it were proper under 28 U.S.C. § 1391, the general venue provision.  Section 1391(b) provides:

---

5       Neither party has pointed the Court to any authority addressing whether the reasoning in *GTE New Media Services*, which interpreted section 12 of the Clayton Act, 199 F.3d at 1345, applies to section 13(b) of the FTC Act, and the Court need not decide the issue given its ruling on transfer under Rule 1404(a).

> A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

The Commission contends that venue is proper in this district because the "events or omissions giving rise to the claim occurred" in the District of Columbia, where the premerger notification should have been delivered and was not. Opp. to Mot. to Dismiss at 3, quoting 28 U.S.C. § 1391(b)(2).[6]

LCMC maintains that it is only section 12 of the Clayton Act, and not section 13(b) of the FTC Act, that sets out the prerequisites for where the FTC's action may be brought.[7]   Applying

---

6       The FTC also submits that venue is proper under section 1391(b)(1). "Section 1391, and therefore the FTC Act," provides two bases for venue, and each have been satisfied: "a substantial part of the events or omissions giving rise to the claim occurred" here because the District of Columbia is where the hospitals failed to submit their required premerger notice, and the hospitals are "subject to personal jurisdiction" here and so are "deemed to reside in this district, and venue is proper in this district" under Section 1391(b)(1). Opp. to Mot. to Transfer at 9–10, citing *FTC v. Bay Area Bus. Council, Inc.*, No. 02 C 5762, 2003 WL 21003711, at *2 (N.D. Ill. May 1, 2003). But this argument is problematical given the opinion of the Court of Appeals in *GTE New Media Services*, 199 F.3d at 1350.

7       *See* LCMC's Reply in Supp. of Mot. to Dismiss at 6–7 (arguing that an action to compel a defendant's compliance with the HSR Act, such as this one, arises under section 7A of the Clayton Act: "Section 7A(g) of the HSR Act, 15 U.S.C. §[]18a(g), lays out a specific, detailed remedial scheme for violations of the HSR Act. . . .   [U]pon failure 'substantially to comply with the notification requirement' . . . , the FTC or the United States may apply to a district court for a compliance order . . . .   15 U.S.C. §[]18a(g)(1)–(2).   And because Section 7A does not have its own provisions for venue or service of process, Section 12 of the Clayton Act, 15 U.S.C. § 22, supplies the rule.").

the section 12 language, the hospital asserts that venue is not proper in this district because LCMC is not an inhabitant of the district, it is not found in this district, and does not transact business in this district. *See* Mot. to Dismiss at 3–5, citing *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 35 (D.D.C. 2007) (noting that under Section 12 of the Clayton Act, transactions do not have to be related to the cause of action or the subject matter of the suit, but that a corporation must first be found to be an inhabitant of, be found in, or transact business in a judicial district under the venue prong).

LCMC also resists the notion that this dispute falls within the general venue statute incorporated in section 13(b), asserting that "[a] claim originates 'in the location where the corporate decisions underlying those claims were made or where most of the significant events giving rise to the claims occurred.'" LCMC's Reply in Supp. of Mot. to Dismiss at 3–4, quoting *Beall v. Edwards Lifescis. LLC*, 310 F. Supp. 3d 97, 104 (D.D.C. 2018) and citing *Berenson v. Nat'l Fin. Servs., LLC*, 319 F. Supp. 2d 1, 4 (D.D.C. 2004).

But these opinions – which are not binding in any event – do not support respondents' contention that this principle governs the interpretation of section 1391; indeed, they were not decisions concerning venue at all. The question before the court in *Beall* was whether the plaintiff's employment discrimination action had to be transferred in accordance with a forum selection clause in her employment agreement. The court ruled that the clause did not apply because the plaintiff was challenging an allegedly discriminatory compensation system and not suing to enforce the terms of the contract. 310 F. Supp. 3d at 101–02. The court then took up the issue of whether the case should be transferred for the convenience of the parties pursuant to 28 U.S.C. § 1404(a), and it found that the substantial deference ordinarily accorded the plaintiff's choice was weakened because most of the relevant events giving rise to her claim occurred

elsewhere, where the defendant's headquarters was located. *Id.* at 104. Then, when addressing not venue, but the private interest factor of "whether the claim arose elsewhere," the court observed, "[c]ourts in this district have held that claims 'arise' *under 28 U.S.C. § 1404(a)* in the location where the corporate decisions underlying those claims were made or where most of the significant events giving rise to the claims occurred." *Id.* at 105 (emphasis added), quoting *Treppel v. Reason*, 793 F. Supp. 2d 429, 436–37 (D.D.C. 2011). After considering all of the relevant factors, the court granted the motion to transfer without ever suggesting that venue was improper in the District of Columbia, where plaintiff lived. *Id.* at 107.

In *Berenson*, the court was not called upon to address the question of venue either. In that case, a group of D.C. residents who subscribed to an electronic bill payment service sought to bring a class action in this court against the service, a Delaware corporation with its principal place of business in Massachusetts, alleging violation of not only a federal statute concerning electronic transfers, but a Massachusetts consumer protection provision, as well. The proposed class would have included subscribers from all over the country, and a greater percentage of them lived in Massachusetts than in the District. Among other factors, the court did take note of the defendants' argument that the policy decisions and actions that allegedly caused the economic harm to the plaintiffs took place in Boston. 319 F. Supp. 2d at 4–5. Again, though, the court transferred the case for the convenience of the parties in the interest of justice under section 1404(a), and not because venue was improper here. *Id.* at 3–5.

Respondent LCMC has pointed to no authority that would contradict the Commission's position that the District of Columbia is a proper venue because the alleged omission giving rise to the claim – that is, the failure to comply with the premerger notification requirement, *see, e.g.*, Pet. ¶¶ 6, 8, 11 – occurred here. But neither has the FTC identified any binding precedent in its

favor.  While the government's reading appears to be consistent with the plain language of the statutory language that a civil action "may" be brought in a judicial district in which a substantial portion of "the events *or* omissions giving rise to the claim occurred," the Court need not reach the issue, and it need not decide whether it is section 13(b) of the FTC Act or section 12 of the Clayton Act that governs the jurisdictional question either because it finds, in its discretion, that transferring this action is appropriate under section 1404(a).

## II.     Transfer under 28 U.S.C. § 1404(a)

The threshold question to be determined when considering a motion under section 1404(a) is whether the action "might have been brought" in the transferee district.  28 U.S.C. § 1404(a).  This is not disputed by the parties, *see* Mot. to Transfer at 4 n.3; Opp. to Mot. to Transfer at 9 n.1, so the Court will focus on the private and public considerations of convenience and fairness.  *See The Wilderness Soc'y*, 104 F. Supp. 2d at 12.

To understand how the factors apply, it is necessary to understand the nature of the case.  According to the respondents, the fundamental legal questions at issue here and in the Eastern District of Louisiana "are whether Louisiana's COPA legislation and implementation meet the Supreme Court's standard for state action antitrust immunity, and, if so, whether a transaction protected by the state action antitrust immunity doctrine is also exempt from compliance with the Hart-Scott-Rodino Antitrust Improvements Act of 1976, Public Law 94-435."  Mot. to Transfer at 6.  The case also raises the question of whether a finding that state approval under the COPA statute qualifies as "state action" exempts a transaction from federal antitrust enforcement entirely, or whether it simply serves as a potential defense to any federal action to enjoin or unwind the merger.  *See* FTC's Mem. at 7–8 ("[T]he state action defense . . . is not akin to Eleventh Amendment immunity or qualified immunity, which immunizes a defendant from suit. . . . .

16

Instead, the state action defense 'is no more a protection from litigation itself than is any other ordinary defense . . . .").

An equally important question to be resolved, though, is whether – even if the ultimate receipt of a COPA would immunize a completed transaction from federal action – parties that have agreed to engage in a reportable acquisition covered by a COPA statute are free to disregard the notification and waiting period requirements of the HSR Act from the start.  The FTC characterizes the dispute in these terms:  "[d]eciding this case requires resolving a single legal question:  does a potential state-action defense exempt parties from the HSR Act's requirement to submit notice of their transaction to federal authorities located in the District of Columbia?"  Opp. to Mot. to Transfer at 5.

> ### A.    Private Interest Considerations

With respect to the first two private interest factors, the parties' choice of forum, the D.C. Circuit has held that "a plaintiff's choice of forum will rarely be disturbed . . . unless the balance of convenience is strongly in favor of the defendant."  *Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955); *Sheffer v. Novartis Pharms. Corp.*, 873 F. Supp. 371, 376 (D.D.C. 2012) (a defendant's choice of forum is not ordinarily entitled to deference unless defendants can "establish that the added convenience and justice of litigating in its chosen forum overcomes the deference ordinarily given to the plaintiff's choice").  A defendant's choice of forum may be accorded some weight, however, when there are parallel proceedings in the proposed district.  *See Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 193 (D.D.C. 2012); *Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007) ("[T]he most significant factor weighing in favor of transferring [a] case is the presence of closely related litigation . . . ."); *Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 77 (D.D.C. 2004) ("[T]he fact that there is an ongoing case dealing with

similar issues in another jurisdiction weighs very heavily in favor of a transfer under § 1404(a)."), citing *In re Scott*, 709 F.2d at 721 n.10.

The Commission argues that its choice of forum is entitled to substantial deference, since "[t]he only event relevant to deciding this case – Respondents' failure to file under the HSR Act" occurred here.  Opp. to Mot. to Transfer at 11–12, citing *Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002).  Further, it urges the Court to disregard the declaratory judgment actions in the Eastern District of Louisiana as "preemptive strikes" to be accorded no weight because they were filed in anticipation of the Commission's filing.  Opp. to Mot. to Transfer at 7, citing *Lewis v. Nat'l Football League*, 813 F. Supp. 1, 4 (D.D.C. 1992).

Respondents contend that their choice of forum the day before this action was filed deserves deference given the "well-established" first-to-file rule.  LCMC & HCA's Reply in Supp. of Mot. to Transfer at 3, quoting *Taylor Energy Co. LLC v. United States*, 2020 U.S. Dist. LEXIS 190661, at *22 (D.D.C. Oct. 14, 2020).[8]

This Circuit accords the Commission's choice of forum great weight, *Gross*, 221 F.2d at 95, and while district courts may consider whether a first-filed case was part of a "preemptive strike," they also consider the "compelling public interest in avoiding duplicative proceedings (and potentially inconsistent judgments)."  *Defs. of Wildlife v. Jewel*, 74 F. Supp. 3d 77, 86 (D.D.C. 2014); *see also Int'l Painters & Allied Trades Indus. Pension Fund v. Painting Co.*, 569 F. Supp. 2d 113, 117 (D.D.C. 2008), citing *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347–48

---

8    The respondents add that Louisiana is the most logical place to resolve the dispute since the transaction happened there, the case involves the interpretation and application of Louisiana law, and the state of Louisiana intervened to protect its sovereign interest in how its statute is interpreted,  LCMC & HCA's Reply in Supp. of Mot. to Transfer at 4, and those arguments will bear on the consideration of other private and public factors.

(Fed. Cir. 2005) (holding that whether a party intended to preempt another's lawsuit is not dispositive but "one factor in the analysis").

Here, the Court finds the Commission's choice of forum is entitled to great deference, but the respondents' choice weighs in the balance as well.[9]

As for the other private interest factors, the parties agree this case involves a question of law:  whether the hospitals' transaction, which was granted a COPA pursuant to Louisiana's COPA statute, exempts the hospitals from filing a premerger notification under the HSR Act based on the

---

9       The Court notes that the Commission relies exclusively on selective excerpts from non-binding district court opinions when pressing the Court to discount the weight to be accorded to "preemptive" lawsuits.  *See* Opp. to Mot. to Transfer at 7.  And while the cases it cites do caution judges to be alert to declaratory judgment actions meant to defeat liability in a subsequent coercive suit, *see Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 78 (D.D.C. 2009), or cases brought in particular venues in an effort to obtain the benefit of more favorable law, *id.*, they involve very different procedural scenarios and do not lay down any rule to be rigidly applied.  *See Lewis*, 813 F. Supp. at 4, quoting *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 627 (D.C. Cir. 1975) ("The court must follow the D.C. Circuit's view that 'choice of forum cannot be suitably made by the mechanical application of [the first to file] principle.'").  The opinions emphasize that the solution to the problem of duplicative litigation "requires a balancing not of empty priorities but of equitable considerations genuinely relevant to the ends of justice."  *Lewis*, 813 F. Supp. at 4, quoting *Columbia Plaza Corp.*, 525 F.2d at 628; *Blackhawk Consulting, LLC v. Fannie Mae*, 975 F. Supp. 2d 57, 63 (D.D.C. 2013) (quoting the same); *see also Lewis*, 813 F. Supp. at 4 ("Courts have held that . . . a preemptive strike should be disregarded in selecting the proper forum *if equitable concerns so merit*.") (emphasis added).

        The law in this circuit, then, is that the application of the first-to-file rule and the preemptive strike exception involves assessing all of the equitable considerations in the court's discretion. Here the parties were at an impasse, and while the Court agrees that the filing of the declaratory judgment actions may have been motivated in part by a desire to win the race to the courthouse, LCMC also had a legitimate interest in continuing the integration of operations that had already been approved by the state in public proceedings and in avoiding the cost and disruption that would have been caused by acceding to the FTC's demands.  And for its part, the FTC rushed into the courthouse with a motion for a TRO without pointing to any exigent circumstance that explained its unusual request for a ruling by 10:59 p.m. the following day, *see* FTC's Mem. at 10–11, and while failing to mention that its haste was prompted, at least in part, by the filing of the declaratory judgment actions in Louisiana the day before.  So while the Court will accord the agency's choice the weight to which it is entitled under D.C. Circuit law, it is not persuaded that the hospitals' choice deserves no weight at all.

state action doctrine.  Given this, the convenience of the witnesses and ease of access to sources of proof is of limited importance since there are likely to be few if any witnesses and there is little need for sources of proof.[10]

Also, where the claim arose has little, if any, bearing on the analysis.  Whether the HSR filing omission occurred in this district, where the Commission that was supposed to receive it is located, or the filing requirement arose by virtue of the acquisition, and the events surrounding the failure to comply occurred in Louisiana where the companies are located and the transaction was consummated, the bottom line is that this case will turn on an interpretation of both federal antitrust law and Louisiana's COPA statute.

As for the convenience of the parties, although the Commission is in the District of Columbia, its presence here is not a compelling reason to deny transfer, especially where the government agency "offers no reason why it could not conduct this litigation just as effectively" in the transferee district.  *See FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 28 (D.D.C. 2008).  But the presence of the merging parties in Louisiana is not a significant factor either; the attorneys for the respondents are also based in the District of Columbia.  Where an action involves "'review that the court is likely to determine on the papers,' the convenience factors carry little weight in the

---

10      Even if the COPA submissions made to the Louisiana Attorney General and the record of the public hearing become important to the legal analysis, they can be easily provided by the lawyers in the District of Columbia.

However, since, as the Court explains in more detail when addressing the public interest factors below, a ruling on the legal question may involve not just a consideration of the legislature's intent, the terms of the statute, and the regulations promulgated thereunder, but also consideration of how the statute and regulations are being implemented, the convenience of the witnesses and ease of access to sources of proof could end up weighing in favor of transfer, depending upon whether and how the presiding judge receives evidence on that point.

transfer analysis." *M & N Plastics, Inc. v. Sebelius*, 997 F. Supp. 2d 19, 24–25 (D.D.C. 2013), quoting *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 69 (D.D.C. 2003).

The Court finds that the Commission's choice of forum and the purely legal nature of the dispute tip the balance of the private interest factors somewhat against transfer, but the respondents' interest in the Eastern District of Louisiana deserves some deference as well.

### B.   Public Interest Considerations

In considering the transferee's familiarity with the governing laws, the Court finds that the courts in both venues are equally capable of analyzing the purely legal question presented in this case. *See, e.g.*, *Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 57 (D.D.C. 2012); *Otay Mesa Prop., L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 125 n.1 (D.D.C. 2008); *Flowers*, 276 F. Supp. 2d at 70 n.6, all citing *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987).

The Commission argues that resolving this case does not require any familiarity with or analysis of Louisiana law. Opp. to Mot. to Transfer at 18 ("Whether the Louisiana COPA legislation and implementation met the strictures of the state action defense is not ripe in this action."). The Court disagrees.

It is true that the FTC has framed the dispute in terms of the mandatory obligations embodied in the HSR Act, and it maintains that even if merging parties intend to apply for approval from state authorities under a COPA statute, that does not relieve them from the notification and waiting period requirements found in section 18(a) of the Clayton Act. That question does turn solely on the interpretation of federal law. But the essential fact here that cannot be ignored is that Louisiana has already granted the COPA and the transaction has already taken place. The FTC is not simply seeking sanctions for respondents' alleged past violation of the HSR requirements; it is seeking an injunction to compel compliance with HSR and to enjoin integration *now*. LCMC

21

has put the state legislation squarely at issue in response to that effort, claiming it is *immune* from any federal enforcement, including HSR review, because it has the COPA in hand.

Given the posture of the case, the state action question must be resolved first. If the presiding court determines that the COPA does not confer immunity, that would remove the only claimed legal impediment to the FTC's request for an injunction, as respondents have not identified any statutory exemptions that apply. *See* Mot. to Dismiss at 2 (explaining the basis for the declaratory judgment actions is only that the state action doctrine exempts the hospitals from the HSR filing requirements). And if the court charged with deciding the issue determines that the issuance of a COPA is not simply an available defense, but it serves to exempt the transaction from federal antitrust enforcement under the Clayton Act, then HSR review – even if it is not barred by the invocation of the COPA process at the outset – would arguably be an empty exercise now.

The determination of the effect of the COPA on subsequent federal action will involve the interpretation and application of state law. *Parker v. Brown*, 317 U.S. 341 (1943), and its progeny established the "state action" defense to antitrust liability that the hospitals rely on in this case. In *Parker*, the Supreme Court held the Sherman Act "must be taken to be a prohibition of individual and not state action." *Id.* at 352. Thereafter, the Court was called upon to address whether and when the involvement of a state regulatory scheme could lead to the characterization of a transaction between private parties as "state action." *See FTC v. Ticor Title Ins. Co.*, 504 U.S. 621, 633 (1992) ("*Midcal* confirms that . . . a State . . . may displace competition with active state supervision if the displacement is both intended by the State and implemented in its specific details."), citing *Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980). In examining whether the state action defense applies, "courts ascertain whether there is a clear articulation of state policy accompanied by active supervision by the state." *Feldman v.*

*Gardner*, 661 F.2d 1295, 1305 (D.C. Cir. 1981), vacated sub nom. on other grounds *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, (1983); *Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. 1*, 171 F.3d 231, 236 (5th Cir.1999) (courts examine whether the legislature used "language and context [that] fairly" reflect "a state policy to displace competition").   "Actual state involvement, not deference to private pricefixing arrangements under the general auspices of state law, is the precondition for immunity from federal law." *Ticor Title Ins. Co.*, 504 U.S. at 633; *see also La. Real Est. Appraisers Bd. v. FTC*, 976 F.3d 597, 603 (5th Cir. 2020) (holding that for private parties to raise the *Parker* defense, the challenged restraint must be clearly articulated and affirmatively expressed as state policy, and that the anticompetitive conduct be actively supervised by the state itself), citing *Midcal*, 445 U.S. at 105, and *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 45–46 (1985).  While federal judges in every district are regularly called upon to interpret and apply state law in diversity actions, the unique nature of the state law questions here means that the forum's familiarity with that law points toward transfer.

Moreover, the question of whether the hospitals are  immune because they received a COPA from the state turns not only on the text of the statute and any intentions expressed by the legislature when it was enacted, but more importantly, on the nitty-gritty of the state's implementation of the statutory scheme.  *See Airport Working Grp. of Orange Cnty., Inc. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 232 (D.D.C. 2002) (transferring case involving application of the Clean Air Act and local land use plans and zoning ordinances:  "a district court located in the Central District of California will benefit from its familiarity with local laws and regulations"); *Trout Unltd.*, 944 F. Supp. at 19 (transferring case that "deals directly with federal statutes" but "may also, in part, involve the interpretation of Colorado law"); *Greater Yellowstone*, 180 F. Supp. 2d at 129 (transferee court has no advantage where "case does not involve any issues of state law")

(emphasis omitted); *The Wilderness Soc'y*, 104 F. Supp. 2d at 16 (same).  It is unclear based on the record that has been generated so far whether the state has indeed covered the waterfront in terms of supervision and management such that state action immunity would apply, but it is clear that deciding the issue will require an analysis of the statute, its regulations, and the state's implementation of both.[11]  This weighs in favor of transfer.

Turning to the relative congestion of the courts, the Commission asserts that this court has a shorter disposition time for cases than the Eastern District of Louisiana "by a significant margin." Opp. to Mot. to Transfer at 17; Decl. of Neal J. Perlman, Att'y, FTC, Ex. A to Opp. to Mot. to Transfer [Dkt. # 25-1]; Excerpt, Ex. B to Opp. to Mot. to Transfer [Dkt. # 25-2].  Given the recent significant influx of criminal cases and criminal trials in this district beginning in 2021, it is not clear to this Court that time to disposition of civil cases alone is the best metric to use when analyzing this factor.  Also, it is equally important to note that the legal issue in this case may be determined more quickly here since the Commission does not have to answer in the Louisiana actions for sixty days.  The Court finds this factor to be neutral.

---

11    The state has promulgated implementing regulations, La. Admin. Code tit. 48, pt. XXV, §§ 501–19 (2023), but they are comprised largely of procedures to be followed for the filing of applications, review by the state, and reconsideration if an application is denied.  *See* La. Admin. Code tit. 48, pt. XXV, §§ 503–516, 519 (2023).  One regulation requires hospitals to inform the agency if there have been any changes to the information submitted to the agency in the application, and to submit reports and data annually, including, "a detailed explanation of the actual effects of the agreement on each party, including any change in volume, [and] market share" and "a detailed explanation of how the agreement has affected the cost, access, and quality of services provided by each party."  La. Admin. Code tit. 48, pt. XXV, § 517, ¶¶ 3, 4 (2023). Another provides for revocation of a COPA if "the attorney general receives information indicating that agreement is not . . . resulting in lower health care costs or greater access to or quality of health care than would occur in absence of the agreement."  La. Admin. Code tit. 48, pt. XXV,  § 519. But it is the nature and quality of the information provided and what the Louisiana Department of Justice does with it that will inform the answer to the state action question.

As for the third and "arguably most important" public interest factor, the Court finds that Louisiana's interest in having its COPA statute litigated at home weighs significantly in favor of transfer. *Pres. Soc'y of Charleston*, 893 F. Supp. 2d at 57, quoting *S. Utah Wilderness All. v. Norton*, No. CIV.A. 01-2518(CKK), 2002 WL 32617198, at *5 (D.D.C. June 28, 2002). The Commission emphasizes that it has an interest in enforcing the nation's antitrust laws and that "[w]hen national significance attaches to a controversy, local interest can sometimes be diminished." Opp. to Mot. to Transfer at 16, quoting *Sheffer*, 873 F. Supp. 2d at 381. The Court agrees that there is paramount national interest in how the HSR Act is enforced, and that this district has an equal if not a greater stake in the enforcement of a federal statute by a federal agency located here. But as noted above, this case does not simply present the abstract question of whether merging hospital systems must comply with the unambiguous language of the HSR Act notwithstanding their plans to apply for state approval; the legal implications of a COPA that has been formally issued, and the nature of and intentions behind a particular state's COPA process and regulatory regime are at issue.

There is a significant local interest in the state hospital merger approval process in Louisiana and how it bears on the enforcement of the antitrust laws with respect to hospitals in that state. Indeed, the Louisiana Attorney General has intervened as a party in the Louisiana actions. Interpretation of the COPA statute will affect not only respondent hospitals in this case, but also other entities in Louisiana and may indeed trigger action by the state's legislature and regulatory bodies, depending on the outcome. And while the interpretation of Louisiana's statute will affect the Commission's ability to enforce the HSR filing requirements *in Louisiana*, it will not necessarily bear on its enforcement of the HSR Act or other antitrust laws in other states.

For all of these reasons then, the Court finds that the public interest factors support the conclusion that this case should be decided in the federal court in Louisiana:  that forum has the greater interest in whether its state regulatory system is sufficiently robust to qualify under the stringent legal test for what constitutes the "state action" that would supplant federal antitrust regulation.

## CONCLUSION

Notwithstanding the Commission's interest in its selection of forum and the national interest in enforcing federal antitrust law, the Court finds in its discretion that this matter has a greater connection to Louisiana and the public interest factors outweigh the private interest factors under section 1404(a).  Accordingly, it is hereby

**ORDERED** that pursuant to 28 U.S.C. § 1404(a), this case is **TRANSFERRED** to the United States District Court for the Eastern District of Louisiana.[12]

**SO ORDERED.**

AMY BERMAN JACKSON
United States District Judge

DATE:  May 23, 2023

---

12     The Court emphasizes that this opinion should not be read to express any point of view with respect to the merits of the state action question.  Also, this opinion concerning where that question should be decided does not address the question of where a future action – if any – concerning the validity of the merger under the antitrust laws should be brought.